UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMUEL SOREL<br><br>     Plaintiff,<br><br>  v.<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION; CITY OF NEW YORK; YVROSE PIERRE; and KYROLLOS MAGHARIOUS<br><br>     Defendants. | **MEMORANDUM AND ORDER**<br><br>24-cv-07225 (LDH) (SDE) |

LASHANN DEARCY HALL, United States District Judge:

Samuel Sorel ("Plaintiff") brings the instant action against the New York City Department of Education ("NYC DOE"), the City of New York, Yvrose Pierre, and Kyrollos Magharious (collectively, "Defendants") asserting the following federal claims: discrimination in violation of the Americans with Disabilities Act (the "ADA"); discrimination in violation of the Rehabilitation Act; retaliation in violation of the ADA; and, retaliation in violation of Section 504 of the Rehabilitation Act. In addition, Plaintiff asserts the following state law claims: discrimination in violation of NYS Executive Law §§ 2961(a) and 297(9); discrimination in violation of NYC Admin. Code § 8-502(a); discrimination in violation of NYC Admin. Code §§ 8-107 and 8-502(a); aiding and abetting discrimination on the basis of disability in violation of NYS Executive Law sections 296(6) and 297(9); retaliation in violation of the New York State Human Rights Law; retaliation in violation of the New York City Human Rights Law; retaliation in violation of New York State Civil Service Law § 75-b(2)(a)(ii); common law fraud

1

under New York State law; and defamation.  Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint in its entirety.

## BACKGROUND

Since February 2013, Plaintiff has been employed as a physical education teacher by Defendants NYC DOE.  (*Id.* ¶ 27.)  From 2021 until present, he has been assigned to the New York City School 753K (the "School").  (*Id.* ¶ 26.)  On December 23, 2022, Plaintiff was "sucker punched" on his right ear by a student ("KD").  (*Id.* ¶ 29.)  Immediately thereafter, Plaintiff was transported to the Brooklyn Hospital Center Emergency Room.  (*Id.* ¶¶ 31-33.)  At the hospital, an ER Physician noted damage to Plaintiff's right ear drum and advised Plaintiff to consult an ENT specialist.  (*Id.* ¶ 34.)  Although it is not altogether clear from the pleadings when, at some point after the incident, Plaintiff was diagnosed with a concussion, tinnitus, PTSD, vertigo, insomnia, and an aneurism on the right side of his brain.  (*Id.* ¶¶ 36-37.)  Each of these diagnoses were regarded as "causally related to the punch" Plaintiff endured.  (*Id.*)  Plaintiff contends Defendants Pierre and Magharious were aware of this diagnosis.  (*Id.* ¶ 46.)

After Plaintiff left the hospital, he returned to the School to retrieve his keys where he was confronted by Defendant Pierre, the School's principal, and Defendant Magharious, the School's Assistant Principal.  (*Id.* ¶ 38.)  Plaintiff informed Defendants Pierre and Magharious that he could not hear because of an injury to his ear.  (*Id.*)  In response, Defendant Pierre instructed Defendant Magharious to "write [Plaintiff] up because he was yelling."  (*Id.*)  Defendant Magharious wrote Plaintiff up as instructed.  (*Id.* ¶ 39.)  Defendant Pierre then followed Plaintiff out of the gym and loudly stated in the hallway in front of Defendant Magharious and others, "you hit a student.  You should not be hitting students."  (*Id.* ¶ 41.)

Soon after the assault, Defendants Pierre and Magharious were told by student-witnesses that they saw KD punch Plaintiff and that Plaintiff never hit KD. (*Id.* ¶¶ 47-49.) These statements were memorialized into a signed written statement. (*Id.* ¶¶ 48-49.) In addition, Ms. Black, who was present for the assault, provided a statement noting that, after KD hit Plaintiff, KD exited the gym exclaiming that he "hit the gym teacher." (*Id.* ¶ 50.)

Defendants Pierre and Magharious asked the DOE-Special Commissioner of Investigation to investigate whether Plaintiff hit a student. (*Id.* ¶ 47.) And, notwithstanding the Student-witnesses and Ms. Black's statements, Defendants told the District Superintendent, the Office of Special Investigation ("OSI"), and others in the DOE administration that Plaintiff hit KD. (*Id.* ¶ 57.) Between January 18 and 23, 2023, OSI interviewed various witnesses in the presence of Defendant Magharious. (*Id.* ¶¶ 59-64.) Defendant Magharious then reported to Defendant Pierre that none of the witnesses stated that Plaintiff hit KD, and that they each stated that KD "sucker punched" Plaintiff. (*Id.* ¶ 68.) Nevertheless, Defendants Pierre and Magharious informed the District Superintendent that Plaintiff was negligent and caused his own injuries by hitting KD. (*Id.* ¶¶ 70-71.)

From December 23, 2022, to the end of June 2023, Plaintiff took a medical leave from work. (*Id.* ¶¶ 46, 52.) At an unspecified time during this period, Plaintiff submitted a Line of Duty Injury ("LODI") application. (*Id.* ¶¶ 54.) On January 30, 2023, the District Superintendent disapproved Plaintiff's LODI claim and placed a bar on its medical review.[1] (*Id.* ¶ 74.) Then,

---

[1] In the Complaint, Plaintiff alleges, without accompanying detail, that Defendants Pierre and Magharious "barred" Plaintiff's LODI application. (*Id.* ¶ 55.) However, Plaintiff also alleges that it was the District Superintendent, who disapproved the LODI claim and placed a bar on its medical review. (*Id.* ¶ 74.) The Court construes Plaintiff's allegation that Defendants Pierre and Magharious "barred" Plaintiff's LODI application as alleging that they caused the District Superintendent to disapprove of Plaintiff's LODI application.

towards the end of February 2023, Plaintiff's pay checks were "docked" with the reason listed as, "absent without pay." (*Id.* ¶ 75.)

On March 31, 2023, Plaintiff applied for and received a restoration for health leave from December 23, 2022, through April 20, 2023. (*Id.* ¶ 76.) However, in April 2023, DOE requested additional medical documentation from Plaintiff. (*Id.* ¶ 77.) In addition, Plaintiff's paycheck continued to be docked "ostensibly because" Defendants' "claimed that any disability was due to Plaintiff's 'own recklessness and negligence.'" (*Id.* ¶¶ 79.)

In June 2023, Plaintiff returned to work after his neurologist cleared him to do so. (*Id.* ¶ 52.) At this point, Plaintiff was fully capable of teaching physical education and did not need to be accommodated for his diagnoses because they had become "residual" in nature.[2] (*Id.* ¶ 53.) That said, according to the Complaint, Defendants "perceived [Plaintiff] as being disabled[] because they would not allow him to teach the 2023 Summer Session." (*Id.* ¶ 80.) And, on June 26, 2023, Plaintiff was assigned to the "rubber room" reassignment center for the period of June 26, 2023 until November 17, 2023. (*Id.* ¶¶ 81-83.)

On October 18, 2023, the Office of Special Investigation released its finding that the allegation of Plaintiff having engaged in corporal punishment was unsubstantiated. (*Id.* ¶ 84.) Nonetheless, Defendants failed to reinstate Plaintiff to regular duty, instead keeping him in the "rubber room" reassignment center. (*Id.* ¶ 85.) To date, Plaintiff has not been assigned to

---

[2] In the Complaint, Plaintiff alleges that, by the end of June 2023, he did not need an accommodation to teach physical education at the School. (*Id.* ¶¶ 53, 81, 103.) However, Plaintiff also makes reference to having potentially needed "a very minor accommodation such as periodically sitting down for less than a minute." (*Id.* ¶¶ 80, 93.) Because Plaintiff unequivocally represented in the Complaint that he did not need an accommodation when he was cleared to return to work in June 2023, (*id.* ¶ 53, 81, 103), the Court need not accept Plaintiff's allegation that he may have needed a minor accommodation when he returned to work in June 2023. *See Koulkina v. City of New York*, No. 06 Civ. 11357, 2009 WL 210727, at *6 (S.D.N.Y. Jan. 29, 2009) (observing that where allegations within a complaint tend to contradict each other, courts need not accept the allegations as true); *Fisk v. Letterman*, 401 F.Supp.2d 362, 368 (S.D.N.Y. 2005) (Courts are "not obliged to reconcile a plaintiff's own pleadings that are contradicted by other matters asserted . . .")

regular teaching duty but remains "assigned to the 'rubber room' reassignment center." (*Id.* ¶ 89.)

On November 22, 2023, Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination on the basis of disability. (*Id.* ¶ 86.) On July 16, 2024, the EEOC issued a Notice of Your Right to Sue dated July 16, 2024. (*Id.* ¶ 20.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the Amended Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

### I.     Plaintiff's Discrimination Claims

#### a.   Timeliness of Plaintiff's Discrimination Claims under the ADA

By their motion, Defendants argue that many of the acts referenced in Plaintiff's complaint are time-barred from being pursued under the ADA because Plaintiff filed his EEOC charge more than 300 days after those acts occurred. (Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 6-7, ECF No. 14.) The ADA requires individuals aggrieved by acts of discrimination to file an ADA complaint with the EEOC within 300 days of an alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The 300-day requirement to file an ADA complaint is

strictly enforced. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) ("A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it.")

Against this backdrop, Defendants argue that, because Plaintiff alleges only filing one EEOC charge of discrimination on November 22, 2023, "any alleged conduct that Plaintiff alleges to have occurred prior to January 26, 2023 (300 days before the filing of Plaintiff's EEOC Charge) . . . [is] time-barred." (Defs.' Mem. at 6-7.) The Court agrees.[3] Because Plaintiff merely alleges filing one EEOC charge on November 22, 2023, the only purported acts of discrimination referenced in the instant Complaint that were timely raised under the ADA are those that occurred 300 days before November 22, 2023 (i.e., January 26, 2023).[4] *See Morgan*, 536 U.S. at 113.

## II.   Plaintiff's injuries are not recognized disabilities under the ADA or the Rehabilitation Act.

The ADA "makes it unlawful for an employer to discriminate against an individual "*on the basis of* disability." *Natofsky v. City of New York*, 921 F.3d 337, 345 (2d Cir. 2019) (emphasis in original) (quoting 42 U.S.C. § 12112). Likewise, the Rehabilitation Act provides that no individual shall be subject to discrimination in any program or activity receiving federal

---

[3] Because neither party provided the Court with Plaintiff's EEOC charge, out of an abundance of caution, the Court presumes Plaintiff raised all allegations in the Complaint that purportedly occurred prior to November 22, 2023.

[4] Defendants also contend that Plaintiff's ADA claims must be dismissed for failure to commence this action within 90 days of the EEOC's issuance of a right-to-sue letter. (Defs. Mem. at 7-8.) This argument is without merit. "[A] claim under the ADA must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (citing 42 U.S.C. § 2000e–5(f)(1) and 42 U.S.C. § 12117(a)). There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice. *Id.* And, "[t]here is a further presumption that a mailed document is received three days after its mailing." *Id.* Here, Plaintiff alleges that the EEOC issued a Notice of Your Right to Sue dated July 16, 2024. (Compl. ¶ 20.) Because Defendants have not attempted to rebut this presumption with sworn testimony or other admissible evidence, the Court presumes the notice was received on July 19, 2024. *See Tiberio*, 664 F.3d at 37. Plaintiff commenced this action on October 15, 2024, which is 88 days after July 19, 2024. (*See* Compl.)

financial assistance "*solely by reason* of her or his disability." *Id.* at 344 (quoting 29 U.S.C. § 794(a) (internal quotation marks omitted)). Because the standards under both statutes are generally the same, "we treat claims under the two statutes identically." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (internal quotations and citation omitted).

Both the ADA and the Rehabilitation Act interpret a "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B). The ADA contains a non-exhaustive list of "major life activities," including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping and . . . working." 42 U.S.C. § 12102(2). The term "substantially limits," is "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). That is, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 1630.2(j)(1)(ii). However, "courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) (emphasis in original). To determine whether a Plaintiff has plausibly alleged a substantial limitation on major life activities, courts examine several factors, including: "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long-term impact." *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020) (citation omitted).

As Defendants correctly argue, the duration of Plaintiff's claimed disability renders it insufficient to serve as the basis for Plaintiff's federal disability discrimination claims. (Defs.'

Mem. at 9-12.) "A 'temporary impairment' lasting only a few months is, 'by itself, too short in duration . . . to be substantially limiting,'" and therefore insufficient to serve as the basis for a plaintiff's disability discrimination claim. *Francis v. Hartford Bd. of Educ.*, 760 F. App'x 34, 36 (2d Cir. 2019) (quoting *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316-17 (2d Cir. 1999)). Pertinently, the Second Circuit has found that a temporary impairment of seven months is "too short [in] duration . . . to be 'substantially limiting'" and thus insufficient to "make out a claim that [a plaintiff] was disabled. . . . . . ." *Adams*, 187 F.3d at 316-17 (first alteration in original) (quoting *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998), *superseded by statute on other grounds by* 42 U.S.C. § 12102(3)(A)).

According to the Complaint, Plaintiff's claimed disability arose on December 22, 2022, rendering him unable to work until the end of June 2023. (Compl. ¶ 52.) By the end of June 2023, however, Plaintiff's claimed disability was "residual" in nature. (Compl. ¶ 81.) In fact, according to the Complaint, Plaintiff was "ready, willing and able to teach . . . without an accommodation." (*Id.*) In other words, Plaintiff's claimed disability was a temporary impairment, which is insufficient to provide a basis for a discrimination claim under the ADA or the Rehabilitation Act. That is, because Plaintiff's claimed disability lasted only six months, it, "by itself, [is] too short [in] duration . . . to be 'substantially limiting," and thus, insufficient to "make out a claim that [he] was disabled" within the meaning of the ADA or the Rehabilitation Act. *See Adams*, 187 F.3d at 316-17 (citation omitted) (alteration in original); *see also Huskins v. Pepsi Cola of Odgensburg Bottlers, Inc.*, 180 F. Supp. 2d 347, 352-53 (N.D.N.Y. 2001) (holding a six-month absence due to injury "was temporary" and therefore not "a disability within the meaning of the ADA"). The Court recognizes that Plaintiff alleges he suffered from "residual disability" after he was cleared to return from work. (Compl. ¶ 53.) Nonetheless,

8

Plaintiff failed to allege any facts that illuminate the nature of his claimed "residual disability." For example, Plaintiff does not describe how, if at all, this residual disability limited major life activities, its duration or expected duration, or the existence of any actual or expected permanent or long term impact.  As such, Plaintiff's claimed "residual disability" cannot be the basis for his discrimination claims.[5]  *See Reid v. Time Warner Cable*, No. 14-CV-3241, 2016 WL 743394, at *6 (E.D.N.Y. Feb. 22, 2016) (dismissing ADA claim where the plaintiff "does not provide any details concerning the frequency with which [his] symptoms manifested, or the duration he suffered from them"); *cf. Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) ("Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial." (citing 42 U.S.C. § 12102(2)(A))).

### a. Plaintiff failed to allege a disability discrimination claim under the ADA or Rehabilitation Act as a matter of law.

Even if Plaintiff's claimed disability was sufficient to provide a plausible basis for his federal disability discrimination claims, these claims still fail in light of the remaining allegations in the Complaint.  "To state a claim under Title II of the ADA or under the Rehabilitation Act, [a] plaintiff must allege that (1) the plaintiff is a qualified individual with a disability; (2) the defendant is subject to the ADA or the Rehabilitation Act; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or

---

[5] In the Complaint, Plaintiff alleges that he was discriminated against based on his "perceived disability." (Compl. ¶ 89.)  However, to assert a claim based on a perceived disability, Plaintiff must do more than merely assert that he is regarded as having some measure of a disability or impairment. *Greco v. Cnty. of Nassau*, 146 F. Supp. 2d 232, 243 (E.D.N.Y. 2001)  Instead, "the plaintiff must show plaintiff must show that the employer perceived the plaintiff as substantially limited in a major life activity." *Id.* (citing *Ryan v. Grae & Rybicki, P.C.* 135 F.3d 867, 872 (2d Cir.1998)).  In this case, other than Plaintiff's absence from work, Plaintiff has not alleged any facts that would support Defendants regarding Plaintiff as being substantially limited in a major life activity.  (*See* Compl.)  And, critically, allegations of one's "inability to perform [a] single job" is insufficient to show "a substantial limitation on the ability to work. *Id.*  Accordingly, Plaintiff's perceived disability claim is wholly deficient under Rule 8(a) as it lacks the required factual detail to be plausible.

was otherwise discriminated against by the defendant, by reason of the plaintiff's disability." *Clark v. DMV*, No. 22-CV-3086, 2022 WL 1471349, at *7 (S.D.N.Y. May 9, 2022) (citing *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009)).

To plausibly allege causation, a plaintiff must plead facts that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) [6]; *see also Clark*, No. 22-CV-3086, 2022 WL 1471349, at *8 (dismissing plaintiff's discrimination claims under the ADA and the Rehabilitation Act because plaintiff failed to allege sufficient facts to satisfy the third element). "[I]n making the plausibility determination, the court is to 'draw on its judicial experience and common sense.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 679). And, "[o]n a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to 'nudge[] their claim across the line from conceivable to plausible.'" *Id.* at 87 (quoting *Twombly*, 550 U.S. at 570).

For example, a discriminatory inference "can arise from . . . the employer's criticism of the plaintiff's performance [in degrading terms related to the plaintiff being in a protected class]; or its invidious comments about others in the [plaintiff]'s protected [class]; or the more favorable treatment of employees not in the protected [class]; or the sequence of events leading to the [adverse employment action]." *Littlejohn*, 795 F.3d at 312. In addition, "an inference of discrimination . . . arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Id.* at 312-313. However, "naked assertions

---

[6] Employment discrimination claims are subject to "relaxed" pleading requirements whereby a plaintiff is only required to allege facts that support "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 307, 311.

of discrimination without any specific factual allegation of a causal link between the defendants'

conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to

dismiss." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, at 249 (E.D.N.Y. 2015).

Against this backdrop, Defendants argue that Plaintiff's federal discrimination claims

must be dismissed because Plaintiff does not allege facts that "support[] an inference that the

[discriminatory acts] of which he complains . . . was based on his alleged disability."

(Defs.' Mem. at 13.)  That is, Defendants argue that the Complaint fails to assert facts that give

plausible support to a minimal inference that the conduct of which Plaintiff complains was taken

with discriminatory animus related to Plaintiff's claimed disability.  (*See id.*)  Defendants are

correct.  Plaintiff does not allege that Defendants criticized his job performance in degrading

terms, that Defendants made comments about other disabled persons, that Defendants gave more

favorable treatment to non-disabled employees, or that he was replaced by a non-disabled

employee.  (*See* Compl.)  Rather, Plaintiff alleges throughout his complaint that Defendants

opposed his LODI application due to his claimed disability, (Compl. ¶¶ 54-55, 71-74, 79, 107-

108, 112), that his pay was denied with discriminatory intent, (Compl. ¶¶ 79, 92), and that

Defendants discriminated against him by assigning him to the "rubber room" reassignment

center and failing to reinstate him to regular duty, (*id.* ¶¶ 83, 85, 89, 107-108, 112).  However,

because the Complaint fails to provide factual detail in support of his conclusion that Defendants

actions were made with discriminatory animus, Plaintiff's federal discrimination claims are too

conclusory to survive Defendants' motion to dismiss.  *See Soloviev*, 104 F. Supp. 3d at 249; *see

also Smith v. Local 8191 B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a

motion to dismiss" (citation omitted)); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("While the

11

pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." (citation omitted)).  In other words, Plaintiff's failure to plead facts that suggest a causal link between the acts of which he complains and his claimed disability is fatal to his federal discrimination claims.  *Bivens v. Inst. for Cmty. Living, Inc.*, No. 14 CIV. 7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) ("A claim is properly dismissed where the plaintiff 'fail[s] to plead any facts that would create an inference that any adverse action taken by . . . [any] defendant was based upon [a protected characteristic of the plaintiff].'" (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).

Moreover, the notion that the denial of Plaintiff's LODI application and the "docking" of his paychecks were acts of discrimination is belied by Plaintiff's own allegations.  In the Complaint, Plaintiff alleges that Defendants opposed his LODI application because Defendants Pierre and Magharious alleged that Plaintiff "was negligent and caused his injury by hitting [KD], [which caused] the Superintendent [to] adopt[] and act[] upon" this allegation.  (*Id.* ¶ 71-74, 79.)  Accepting these allegations as true, and using common sense, the only plausible inference, then, is that Defendants opposed Plaintiff's LODI application because they believed Plaintiff hit a student—not because they were motivated by discriminatory animosity targeted at Plaintiff's claimed disability.[7]  Plaintiff also alleges that his pay was "docked" with discriminatory intent in February 2023, with the reason provided by Defendants being "absent without pay."  (Compl. ¶ 75.)  Again, accepting this allegation as true and using common sense, the only plausible inference that can be gleaned from the Complaint is that Defendants "docked" Plaintiff's pay because of his absence coupled with his LODI application being disapproved and

---

[7] Plaintiff's allegations also indicate Defendant NYC DOE has a policy prohibiting corporal punishment, (Compl. ¶ 84), which, by extension, means Defendants believed Plaintiff acted contrary to Defendant NYC DOE's policy.

barred from medical review.  Indeed, the Complaint is devoid of factual allegations that give rise to any inference that Defendants docked Plaintiff's pay for a different reason.  (*See* Compl.)

Lastly, Plaintiff fails to allege any facts that would support a minimal inference that Defendants were discriminatorily motivated when Plaintiff was assigned to "rubber room."  (*See* Compl.)  And, temporal proximity does not support a minimal inference that Defendants were so motivated.  Plaintiff alleges that Defendants became aware of his claimed disability no later than January 18, 2023. (Compl. ¶¶ 72-73 (alleging Defendants Pierre and Magharious discriminated against Plaintiff by not retracting their allegations against Plaintiff "once they were firmly aware on January 18, 2023" that Plaintiff did not hit KD).)  Plaintiff was assigned to the "rubber room" reassignment center on June 23, 2023.  (*Id.* ¶ 83.)  As such, there was a five-month gap between Defendants becoming aware of Plaintiff's claimed disability and Plaintiff's initial assignment to the "rubber room" reassignment center, which is too long to give rise to an inference of causation by itself.  *See C.C. v. Google, LLC*, No. 24 CIV. 7811, 2025 WL 1938809, at *6 (S.D.N.Y. July 15, 2025) (holding a "three-and-a-half-month gap is too long to give rise to [an] inference of causation"); *cf. Kamiel v. Hai St. Kitchen & Co. LLC*, No. 19CIV5336, 2023 WL 2473333, at *4 (S.D.N.Y. Mar. 13, 2023) ("The case law has generally treated, at the pleading stage, gaps of two months or less—between disclosure of a disability and an adverse action—as plausibly giving rise to an inference of causation in discrimination cases." (collecting cases)).  Plaintiff's discrimination claims under the ADA and the Rehabilitation Act are dismissed.

### III.    Plaintiff fails to state a viable retaliation claim under federal law.

"[T]he elements of a retaliation claim under either Section 504 [of the Rehabilitation Act] or the ADA are '(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity

and the adverse action.'"  *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) (citation omitted).  As is relevant here, an adverse action is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (citation omitted).  That is, "[t]o plead causation, a plaintiff must allege 'that his protected activity was the but-for cause of the adverse employment action.'"  *Anderson v. City of New York*, 712 F. Supp. 3d 412, 433 (S.D.N.Y. 2024) (alteration omitted) (quoting *Ninying v. N.Y.C. Fire Dep't,* 807 F. App'x 112, 115 (2d Cir. 2020)).  A causal connection can be established by indirect evidence, like the temporal proximity between the adverse action and the protected activity.  *Natofsky*, 921 F.3d at 353.

Here, Plaintiff alleges that Defendants retaliated against him for filing a charge of employment discrimination with the EEOC on November 22, 2023, in violation of the ADA and Section 504 of the Rehabilitation Act.  (Compl. ¶¶ 134-141.)  Specifically, Plaintiff alleges that, as a result of filing the EEOC charge, he suffered adverse employment actions of: (a) "threatened or actual dismissal" [8]; and (b) being kept in the "rubber room" reassignment center and not reinstated to his employment as a physical education teacher.  (*Id.* ¶¶ 134-139.)

To begin, "actual dismissal" cannot serve as the adverse action supporting Plaintiff's claim because there is no allegation in the Complaint that Plaintiff was ever dismissed or terminated.  (*See* Compl.)  In fact, the Complaint plainly indicates that, at the time he

---

[8] Inexplicably, Defendants fail to address this claim.  (*See generally* Defs.' Mem.)

14

commenced this action, Plaintiff was still employed by Defendants.  (Compl. ¶ 26 (alleging that Plaintiff has been employed by Defendant NYC DOE "from about 2021 to the present"); *id.* ¶ 89 (alleging that Plaintiff is "still assigned to the 'rubber room.'").  Accordingly, "actual dismissal" cannot, at this juncture, be a basis for Plaintiff's retaliation claim.

In addition, the allegation that Plaintiff was threatened "termination or dismissal," (Compl. ¶¶ 136-37), is too vague in nature and non-specific as to time to serve as a basis for his federal retaliation claims.  *See Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412-13 (S.D.N.Y. 2014) (dismissing a retaliation claim where the complaint "fails to state with even a modicum of specificity when the relevant events occurred").  Plaintiff does not articulate who communicated the threat or what the threats conveyed.  *Winston v. City of New York*, No. 12-CV-395, 2013 WL 4516097, at *4 (E.D.N.Y. Aug. 23, 2013) (finding allegations "too vague in nature and non-specific as to time . . . to serve as a basis for [the plaintiff's] retaliation claims" (internal quotation marks omitted)).  And, most fundamentally with respect to the causation analysis, Plaintiff does not say when these purported threats were made.  *See Tenemille v. Town of Ramapo*, No. 18-CV-724, 2020 WL 5731964, at *13 (S.D.N.Y. Sept. 24, 2020) (finding "vague statements about when [certain] events occurred" and a failure to "clarify whether the events occurred before or after he reported" discriminatory conduct fatal to the plaintiff's retaliation claim).  Without this information, the Court cannot assess whether Plaintiff has stated a viable retaliation claim predicated on any purported threats.  *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 573 (S.D.N.Y. 2023) (dismissing plaintiff's retaliation claim because he failed to "provid[e] any concrete examples of [certain] threats, dates when they occurred, or allege specific information to support" a causal connection between the threats and the protected activity).

Plaintiff's retaliation claim based on being kept in the "rubber room" and not reinstated to his employment as a physical education teacher fares no better. As noted, Plaintiff alleges that he was first assigned to the "rubber room" on June 26, 2023. (Compl. ¶ 83.) But, the protected activity in which he engaged—the filing of the EEOC charge—occurred on November 22, 2023—almost five months later. (*Id.* ¶ 86.) It is axiomatic that, to be retaliatory, the alleged retaliatory action must post-date the protected activity. Perhaps recognizing this deficiency, Plaintiff seeks to base his claims, in part, on Defendants "keeping" Plaintiff in the rubber room. (*Id.* ¶ 138.) In effect, Plaintiff seeks to transform pre-protected activity conduct into post-protected activity conduct. But, simply put, that is not how causation works. It is well-settled that, "where the adverse action was already ongoing at the time of the protected activity, or is very similar to another adverse action that was taken before the protected activity, with no other change in relevant circumstances, logic precludes any inference of causation." *Young v. Westchester Cty. Dep't of Soc. Servs.*, 57 Fed Appx. 492, 495 (2d Cir. 2003) (summary order) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (affirming the dismissal of plaintiff's retaliation claim on summary judgment because "the adverse employment actions were both part, and the ultimate product of, 'an extensive period of progressive discipline' which began . . . a full *five months prior* to his filing of the EEOC charges" (emphasis in original))); *Mitchell v. New York City Dep't of Educ.*, No. 24-992, 2025 WL 978366, at *4 (2d Cir. Mar. 31, 2025) (summary order) (affirming the dismissal of Plaintiff's retaliation claim on a motion to dismiss because the alleged adverse employment actions "preceded the protected activity"). As such, because Plaintiff was assigned to the "rubber room" reassignment center approximately five months before he engaged in a protected activity, Plaintiff's federal retaliation claim based on his reassignment must fail. *See id.* And, contrary to what the

16

Complaint suggests, it is of no moment that the Office of Special Investigations released a report indicating that the allegation that Plaintiff hit KD was "unsubstantiated," (*see* Compl. ¶¶ 139-140), because this report was also released before Plaintiff filed the EEOC charge, (*id*. ¶¶ 84-86). Moreover, Plaintiff claims Defendants knew of the lack of basis to substantiate the allegation that he hit KD as early as January 18, 2023, (*id.* ¶ 72)—almost ten months before he filed the EEOC charge.[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint is GRANTED.[10]

SO ORDERED.

Dated: Brooklyn, New York
        March 31, 2026

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

---

[9] Having dismissed the federal claims in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C.A. § 1367(c)(3)).

[10] The Court would be remiss not to mention that, although it is granting Defendants' motion to dismiss, this was by no means the result of zealous advocacy or a well-crafted memorandum. Defendants' memorandum inexplicably failed to address certain allegations and to cite binding precedent on rudimentary points. In addition, Defendants' memorandum was disconnected, contained numerous typos, and has a dysfunctional table of contents.